Paul H. Rechnitzer and Katherine W. Rechnitzer v. Commissioner.
Rechnitzer v. Commissioner
Docket No. 4150-65.
United States Tax Court
T.C. Memo 1967-55; 1967 Tax Ct. Memo LEXIS 207; 26 T.C.M. (CCH) 298; T.C.M. (RIA) 67055; March 22, 1967
Robert E. Kovacevich, 518 Paulsen Bldg., Spokane, Wash., for the petitioners. Gary C. Randall, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the calendar year 1962 in the amount of $311.51. The issues for decision are (1) whether the statutory notice was mailed to petitioners at their "last known address" within the meaning of section 6212(b)(1) of the Internal Revenue Code of 1954, or, in the alternative, whether in any event petitioners timely received such notice of deficiency and were, accordingly, not prejudiced by any alleged error in addressing such notice; and *209 (2) whether petitioners' personal residence had been converted to a profit-motivated use so as to entitle them to deduct in 1962 a loss attributable to the sale of such residence, or, in the alternative, whether the expenses of the sale, which constitute the "loss" claimed, are attributable to the prerental use of the property and should not be considered as a proper "cost" attributable to the final disposition of the property. Findings of Fact Some of the facts were stipulated and the stipulated facts and the exhibits attached thereto are so found. Petitioners Paul H. Rechnitzer (hereinafter referred to as Paul) and Katherine W. Rechnitzer filed a Federal joint income tax return for the calendar year 1962 with the district director of internal revenue, Tacoma, Washington. They stated on that return that their address was 2522 West Dell Drive, Spokane, Washington. On June 1, 1964, the petitioners executed a power of attorney which, inter alia, provided as follows: POWER OF ATTORNEY KNOW ALL MEN BY THESE PRESENTS, That we, PAUL H. RECHNITZER and KATHERINE W. RECHNITZER at 2522 West Dell Drive, Spokane, Washington, hereby make, constitute and appoint, with full power of substitution, *210 ROBERT E. KOVACEVICH, our true and lawful attorney, for us and in our names, place and stead, to sign, make, execute, file and prosecute before the Internal Revenue Service and the United States Treasury Department, all claims for refund, abatement or credit of any and all taxes that have heretofore been or may hereafter be unlawfully or illegally assessed against or collected from us by the said Treasury Department for the calendar year 1962 and to defend us against proposed additional taxes, deficiencies, and penalties for such years; to institute and prosecute such proceedings at law or in equity as he may deem necessary or proper for my relief; to do and perform any and all such other lawful acts as he shall deem necessary and proper to protect our interest; to receive and receipt for checks issued to us covering such sums as may be refunded; to make, execute and deliver all necessary receipts, vouchers, or releases upon the refunding, abatement or credit of any such taxes; to sign all necessary papers and tax returns with our names on our behalf; to request of and receive from the Treasury Department such documents or copies thereof as we may be entitled under the law and regulations *211 to demand and receive, giving and granting unto said attorney full power and authority to do and perform all and every act or thing whatsoever requisite or necessary in and about the premises as fully and to all intents and purposes as we might or could do if personally present and doing thereof; hereby ratifying and confirming all claims or other documents that said attorney may have filed or may file or execute in this matter. And we hereby request and direct that all correspondence, documents, warrants and other data in connection with this matter be sent in care of: Robert E. Kovacevich, 518 Paulsen Building, Spokane, Washington The power of attorney was signed by both petitioners and notarized. It was not signed by Robert E. Kovacevich, petitioner's counsel. Prior to the issuance of the statutory notice of deficiency, (1) a copy of the power of attorney was sent to the Internal Revenue Service and (2) petitioners filed a protest against the proposed deficiency in their income tax for the year 1962 on which protest they listed as their address, c/o Robert E. Kovacevich, 518 Paulsen Building, Spokane, Washington. On April 26, 1965, respondent mailed to petitioners, c/o *212 Robert E. Kovacevich, 518 Paulsen Building, Spokane, Washington, a statutory notice of deficiency. Petitioners filed a timely petition with the Tax Court of the United States on July 12, 1965, which they verified on July 2, 1965. On October 22, 1955, petitioners purchased property located at North 7204 Excell Drive, Spokane, Washington (hereinafter referred to as the Excell Drive property), for a total purchase price of $15,950. Petitioners paid down the sum of $3,450 and became bound to pay a 25-year mortgage in the amount of $12,500. Thereafter, petitioners occupied the Excell Drive property as a personal residence until September 15, 1961, at which time they moved to a new home in Spokane. In April 1961, petitioners obtained an F.H.A. appraisal on the property which indicated a value of $17,750. The appraisal expired on October 13, 1961. The Excell Drive property was listed for sale at $17,750 through the W.C. Spedden Company on September 22, 1961, for a 90-day period. On January 1, 1962, the property was listed for sale with F. S. Barrett & Company. Sales efforts were unsuccessful. On January 6, 1962, the property was rented to Bobby G. Wright (hereinafter referred to as *213 Wright), pursuant to a document styled "Residence Lease." Said lease provided that Wright would rent the property for $98.51 per month from January 15, 1962, through April 15, 1962, and would have an option to purchase the property in question for a total consideration of $17,750 at any time from January 6, 1962, through April 15, 1962. The agreement expressly permitted petitioners to continue showing the property to potential buyers during the lease period, and provided that, if Wright did not exercise the option by April 15, 1962, the property would be subject to prior sale. The rental called for under the residence lease was equal to the petitioners' payments due on their original 25-year mortgage. The lease provided that all rental payments were to be applied to the outstanding mortgage. At the time the Excell Drive property was leased to Wright, the fair market value of the property was $16,750. The property was sold on May 1, 1962, for $16,750 to Wright. When the Excell Drive property was sold on May 1, 1962, petitioners paid to F. S. Barrett & Company a 6 percent commission, as called for in the residence lease. In their return for 1962, petitioners claimed a net loss *214 on the sale of the Excell Drive property in the amount of $1,629.98. Petitioners arrived at their claimed net loss by determining first the fair market value of the property on the date it was allegedly converted from residential to income-producing property, to wit - $16,750. From this figure they deducted their selling expenses, including real estate transaction tax (excise tax), refinancing charges, title costs, revenue stamp cost, real estate commission, and a closing fee. These expenses amounted to $1,629.98, leaving a net realization from the sale of $15,120.02. In their Federal joint income tax return for 1962, petitioners reported a gross return from rental on the Excell Drive property in 1962 of $384.04. They then deducted (1) $11.78 as expenses for repairing a washing machine, (2) $75.32 for real estate taxes, and (3) $23.20 for insurance. No depreciation was computed on the property. Petitioners also reported on their 1962 return a total interest payment of $187.67 to Lincoln First Federal Savings & Loan Association, which held the mortgage on the Excell Drive property. In his statutory notice of deficiency, respondent disallowed the total amount of the claimed loss deduction *215 but reduced petitioners' taxable income by $273.74, the amount of reported net rental income in the year of the sale of the property. Respondent also determined that the $167.50 excise tax deducted by petitioners as a selling expense was properly deductible as a tax and, accordingly, decreased petitioners' taxable income by the amount of $167.50. Opinion The facts involved in the notice of deficiency issue may be summarized as follows: On June 1, 1964, petitioners filed with respondent a power of attorney wherein petitioners requested and directed that "all correspondence, documents, warrants and other data" in connection with proposed deficiencies, inter alia, for the calendar year 1962 be sent in care of Robert E. Kovacevich. Prior to the issuance of the statutory notice, petitioners lodged a protest with respondent wherein they listed their address as c/o Robert E. Kovacevich. Petitioners filed a petition with this Court within the 90-day statutory filing period, which petition was properly verified by petitioners some ten days prior to the filing of said document with the Tax Court. Petitioners first contend that we have no jurisdiction over the case at bar on the grounds *216 that the statutory notice of deficiency was improperly mailed to them. Section 6212(b)(1) states as follows: Income and gift taxes. - In the absence of notice to the Secretary or his delegate under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A or chapter 12, if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, chapter 12, and this chapter even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence. [Emphasis supplied] Petitioners argue that since (1) the notice was mailed to an address other than that which they consider to be their "last known address" and (2) no fiduciary relationship under section 6903 [1] existed between them and Kovacevich, the notice was invalid. *217 In Marjorie F. Birnie, 16 T.C. 861 (1951), this Court's position regarding errors in the statutory notice was succintly phrased: This tribunal has held many times that a petitioner, by filing a petition, does not waive all errors and irregularities in the notice, but may obtain a dismissal for lack of jurisdiction upon a showing that there was an error or irregularity of sufficient magnitude to nullify the notice. * * * Thus, the mere fact that petitioners successfully filed their petition with the Court within the time limit for such filing does not preclude them from challenging the jurisdiction of this Court over the matters raised in the pleadings by reason of error in the mailing of the statutory notice. Instead, we must still determine whether the error or irregularity in mailing existed and was of sufficient magnitude as to render it nugatory. The facts of the instant case are similar to those presented in Williams v. United States, 264 F. 2d 227 (C.A. 6, 1959). There, more than one year prior to his death, the taxpayer filed with the district director of internal revenue a power of attorney wherein the taxpayer "authorized and requested that *218 all communications and other matters be mailed to * * * [the name and address of his attorney in fact]." (264 F. 2d at 228.) After the taxpayer's death but prior to the appointment of an administrator and before any notice of fiduciary relationship was filed, the Commissioner sent a notice of deficiency by registered mail addressed to the taxpayer in care of and at the address of the attorney in fact as requested and directed in the power of appointment on file. Petitioner, in Williams v. United States, supra, contended that the assessment was void because the notice of deficiency was not sent to the "last known address" of the taxpayer. The Court of Appeals for the Sixth Circuit agreed with the taxpayer that the death of the taxpayer revoked the authority of the attorney but, nevertheless, it held that - revocation of the power of attorney did not erase the taxpayer's request therein to the Director that "all communications and other matters be mailed" to the taxpayer at the attorney's address. The Court of Appeals went on to hold that the director's mailing of the statutory notice to the taxpayer in care of his attorney constituted "minimum compliance" *219 with the procedure authorized by the Internal Revenue Code. In Marjorie F. Birnie, supra, this Court took a position similar to the Sixth Circuit's in Williams. The taxpayers filed separate returns in 1945, stating on those returns that their address was 3109 Waverly Drive, Los Angeles, California. In 1947, during the course of negotiations with Government representatives regarding their 1945 taxes, and in that connection, the taxpayers filed documents with the Treasury Department authorizing a certified public accountant "to act" for them "in the matter of determination" of their correct income tax liabilities for 1944, 1945, and 1946. The taxpayers each filed a Waiver of Assessment of Income Taxes for 1945 in 1948 whereon they stated that their address was [in] care of their certified public accountant. Notices of deficiencies for 1945 were made to each petitioner in care of their accountant. Petitions were timely filed in this Court. We stated: The notices were sent to the taxpayers and duly received at an address furnished by them subsequent to the filing of the returns. It was, so far as the Commissioner was put upon proper notice, the latest address of the *220 taxpayers for 1945 tax purposes, the last address known to the Commissioner within the meaning of section 272(k) * * *. [16 T.C. at 862-863.] We believe that the address to which the statutory notice was mailed in the case at bar, that is - c/o the name and address of petitioners' attorney, constitutes petitioners' "last known address" within the meaning of section 6212(b)(1). The direction and request appearing on the power of attorney filed with respondent coupled with the protest which petitioners sent respondent militates for our conclusion. See, Marjorie F. Birnie, supra.Moreover, even if the address to which the statutory notice was sent cannot exactly be said to constitute petitioners' "last known address," we believe that respondent's mailing of the statutory notice to the address shown on the power of attorney and on the protest constitutes minimum compliance with the mailing procedure authorized by section 6212(a). See, Williams v. United States, supra. There is no merit to petitioners' apparent contention that section 6212(b)(1) inexorably compels respondent to send the notice to a taxpayer's residence despite the taxpayer's *221 request and direction that respondent do otherwise. In summary, we cannot find any irregularity in the mailing of the statutory notice herein by which petitioners may obtain a dismissal of the case before us. The substantive issue for decision is whether petitioners are entitled to deduct a loss resulting from the sale of their former residence. Petitioners contend that on the sale of the Excell property in the taxable year 1962 they sustained a loss which is deductible under section 165(c)(2). Respondent contends that the Excell property was acquired for residential purposes and that it retained such status until its sale in 1962. Losses from sales of property by individuals, in order to be deductible, must come within section 165(c)(1) or (2), that is, they must either have been incurred in a trade or business, or in a transaction entered into for profit, though not connected with a trade or business. Accordingly, a loss on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used up to the time of the sale is not deductible, because the loss is not incurred in a trade or business or in a transaction entered *222 into for profit. However, if residential property is, prior to its sale, rented or otherwise converted to income-producing property and is used for such purposes up to the time of sale, the portion of the loss, if any, that occurred subsequent to the conversion date is deductible. [2] See, Heiner v. Tindle, 276 U.S. 582 (1928). The Excell Drive property clearly was rented by petitioners and we are satisfied that the leasehold agreement was legitimate in every respect and not merely a subterfuge arranged to permit petitioners an unwarranted tax benefit. Thus, we must decide whether petitioners, by renting said property to Wright, achieved the requisite "conversion" *223 enabling them to claim a deductible loss on its sale in 1962. Where the requisite "conversion" of residential property is said to have occurred by reason of the rental of the property (as opposed to having been structurally adapted for rental purposes), we belive that the following conditions must generally be met in order that any loss on the property's ultimate sale be deductible: (1) the rental transaction must be profit-inspired and (2) rental of the property must preclude reoccupancy by the owner of the premises as a residence at will. Heiner v. Tindle, supra. We will first consider whether petitioners' rental of the Excell Drive property to Wright constituted a profit-motivated, income-producing venture. Petitioners received from Wright a total gross rental on the Excell Drive property of $384.04, against which amount they offset the cost of repairing a washing machine and the expenses of real estate taxes and insurance costs attributable to the property, leaving a net income of $273.74. The property was also subject to a mortgage and the interest thereupon for approximately four months was apparently $187.67. Respondent contends that, taking into account *224 depreciation on the Excell Drive property, petitioners received an extremely small net profit from the lease agreement which would hardly indicate a profit motive in petitioners' entry into the leasehold transaction. However, we believe that rental of the Excell Drive property to Wright was intended by petitioners to be a lucrative transaction. [3] The fact that petitioners failed to take into account a sum for depreciation in determining their profit is irrelevant. We cannot penalize a taxpayer for bad judgment in this instance. In Ginsburg v. Campbell, Jr., an unreported case (N.D. Tex. 1965), 16 A.F.T.R. 2d 5770, cited by respondent, the taxpayers, eleven days prior to the sale, rented the property in issue at a rate of $125 per month despite the fact that their payments on the mortgage loan were $185 per month. The District Court considered this fact "particularly" important in finding that the property was not converted into income-producing property, *225 presumably because it indicated a lack of a profit-motive. The case at bar differs from the Ginsburg case in two respects: (1) the rental payments herein were equal to the mortgage payments and (2) petitioners intended to make a profit. There is no question that the lease arrangement with Wright destroyed petitioners' ability to reoccupy the Excell Drive property as a residence during the leasehold period. This situation is significantly different from that presented in Morgan v. Commissioner, 76 F. 2d 390 (C.A. 5, 1935), affirming a Memorandum Opinion of the Board of Tax Appeals, certiorari denied 296 U.S. 601 (1935); E. R. Fenimore Johnson, 19 T.C. 93 (1952), and Charles A. Foehl, Jr., T.C. Memo. 1961-93, which cases respondent cites as authority for his position herein. In those cases the taxpayers were unable to show that rental of the properties in issue precluded simultaneous and continued use by the same taxpayers of the properties in general for residential purposes - that is to say, no showing was made in those cases that rental of the properties in issue was mutually exclusive with continued residential use thereof by *226 the taxpayers. Consequently, we do not believe that those cases are in any way controlling herein. Respondent asserts that Gerald Melone, 45 T.C. 501 (1966), controls the instant case. There, in February 1961, the taxpayer entered into an agreement with one A. L. Learner and his wife, for sale to them of the subject residential property. The Learners, on the date of this agreement, paid $5,000 in escrow, and in March 1961 they entered into possession of the subject property. Because of pending litigation regarding a prior contract of sale involving the same property, the taxpayer could not convey clear title at that time. In about May 1961 the taxpayer entered into a supplemental agreement with the Learners under which they agreed to pay $600her monthly rental "up to the date on which title is recorded in the name of Learner." This Court determined that the supplemental agreement was - in substance and reality merely a supplemental standby agreement between [the taxpayer] and the Learners who then occupied the premises as contract purchasers, to provide reimbursement to [the taxpayer] for the costs of maintaining the property, * * * until the pending litigation *227 * * * could be terminated * * *. Thus, unlike the situation presented herein, the Gerald Melone case involved a sale followed by a "rental" on a standby basis which in no way affected the sale. Moreover, there was nothing to indicate that the taxpayer had any profit-motive with regard to the "rental" received. The facts in the instant case are substantively similar to those presented in Edward L. Parker, 19 B.T.A. 171 (1930). The taxpayer, in Parker, purchased a summer residence in 1919 which he occupied as such until 1923. In 1923, he determined to abandon the use of said property and dispose of it by sale. He began to look for a buyer. Some effort was made in 1924 to lease the property and, in 1925, it was first listed for sale or lease. In 1925, the taxpayer secured a tenant and leased the property for six months. In 1926, the taxpayer sold the property at a loss. The Board of Tax Appeals stated: The Supreme Court has held in Heiner v. Tindle, 276 U.S. 582 * * *, that where property originally acquired for residential purposes is subsequently devoted exclusively to the production of taxable income, a transaction is entered into for profit at the date *228 of the change in use from which a [deductible] loss, * * * may result. Such a situation is presented in the present case, and following Heiner v. Tindle, supra, we hold that this petitioner is entitled to deduct the amount of his loss. * * * See also, Edwin Vosburgh, 23 B.T.A. 780 (1931); Joseph F. Cullman, Jr., 16 B.T.A. 991 (1929). On the basis of the foregoing, we believe that petitioners are legally entitled to deduct the loss which they incurred. On brief, respondent makes a last ditch argument to the effect that petitioners suffered no deductible loss because of the manner in which the loss arose. [4] Respondent cites Warren Leslie, Sr., 6 T.C. 488 (1946), and Austin F. Stillman, a Memorandum Opinion of this Court dated May 31, 1950, as support for this contention. However, these cases do not sustain respondent's position. Warren Leslie, Sr., involved a situation where abandoned residential property was not offered for rent and no part of it had been rented. In Austin F. Stillman, the taxpayer failed to present any convincing evidence as to the fair market value of the residential property in issue at the time of its *229 alleged conversion and, consequently, no loss, if any, could be determined. This Court merely found that the fair market value of the property could not be greater than $30,000 but made no findings as to the exact amount of the property's value. Since we have found that the Excell Drive property was converted into income-producing property within the meaning of section 165(c), there is no valid reason to disallow petitioners' loss. Accordingly, *230 we hold for petitioners, and Decision will be entered under Rule 50. Footnotes
1. "SEC. 6903. NOTICE OF FIDUCIARY RELATIONSHIP. "(a) Rights and Obligations of Fiduciary. - Upon notice to the Secretary or his delegate that any person is acting for another person in a fiduciary capacity, such fiduciary shall assume the powers, rights, duties, and privileges of such other person in respect of a tax imposed by this title (except as otherwise specifically provided and except that the tax shall be collected from the estate of such other person), until notice is given that the fiduciary capacity has terminated. "(b) Manner of Notice. - Notice under this section shall be given in accordance with regulations prescribed by the Secretary or his delegate."↩
2. Respondent's own regulations, section 1.165-9(b) (which we believe constitutes an accurate interpretation of the law), specifically states: Property converted from personal use. - (1) If property purchased or constructed by the taxpayer for use as his personal residence is, prior to its sale, rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale, a loss sustained on the sale of the property shall be allowed as a deduction under section 165(a).↩
3. We have Paul's uncontradicted testimony to the effect that he considered the portion of the rental in excess of the interest on the mortgage to constitute a profit since it increased his equity in the property.↩
4. At the time the Excell Drive property was allegedly converted from residential to income-producing use, the fair market value of the property was $16,750. When the property was sold on May 1, 1962, it was sold for $16,750. In arriving at their claimed net loss of $1,629.98, the petitioners determined the fair market value of the Excell Drive property on the date it was allegedly converted from residential to income-producing use to be $16,750. From this figure they deducted their selling expenses, including real estate transaction tax (excise tax), refinancing charges, title costs, revenue stamp cost, real estate commission, and a closing fee. These expenses amounted to $1,629.98 leaving a net realization from the sale of $15,120.02.↩